IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| NEYSA CALL, | ) | |
|       Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 1:20-cv-260 |
| | ) | |
| SETHURAMAN PANCHANATHAN, | ) | |
| *Director, National Science Foundation*, | ) | |
|       Defendant. | ) | |

## MEMORANDUM OPINION

At issue in this Rehabilitation Act action is Defendant's Motion for Summary Judgment, which has been fully briefed and argued and is therefore ripe for resolution. For the reasons that follow, the undisputed factual record reflects the fact that Plaintiff has failed to establish a valid claim for either disability discrimination or retaliation. Accordingly, summary judgment must be granted in Defendant's favor.

## I.

Defendant substantially complied with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56 regarding summary judgment by setting forth a statement of undisputed material facts in separately numbered paragraphs. Plaintiff also attempted to comply with Local Rule 56 by responding to certain of the undisputed facts listed by Defendant. The Defendant's undisputed facts to which Plaintiff did not respond must be deemed admitted. Fed. R. Civ. P. 56(e); L. Civ. R. 56(B). Thus, the following facts are derived from the undisputed facts and the evidentiary record.

- At all relevant times, Plaintiff was employed by the National Science Foundation (NSF).

1

- Plaintiff served as the Program Director of Communications and Analytics for the Division of Earth Sciences (EAR) at NSF.

- Plaintiff described her essential duties in that position as "split" between "half time handling scientific portfolios as a scientific manager, and then half time . . . handling and leading communications effort for the Division of Earth Sciences and geosciences." Def. Ex. A at 6.

- As a "scientific manager," Plaintiff handled grant proposals submitted to NSF by researchers.

- In terms of "leading communications effort[s]," Plaintiff wrote speeches for and coached government officials, gave and hosted panels and presentations at NSF and at scientific conferences, and attended in-person meetings and workshops at NSF and elsewhere. Def. Ex. A at 6–7.

- Because Plaintiff gave presentations, speaking was one of the essential duties of her job.

- Plaintiff's position also demanded her physical presence at NSF and elsewhere. When Plaintiff hosted or participated in a panel, she was "present on site" "every" time. Def. Ex. A at 7. Plaintiff also conducted speech coaching duties in person and considered it "impossible" to accomplish that task via telework. *Id.* Plaintiff frequently attended in-person meetings at NSF's EAR office.

- At all relevant times, Dr. Greg Anderson directly supervised Plaintiff in her NSF position.

- In March 2017, EAR's office—Plaintiff's place of work—was located in Arlington, Virginia.

- On March 16, 2017, Plaintiff suffered an asthma attack at EAR's Arlington office. That attack may have been caused by a fragrance that one of Plaintiff's coworkers sprayed in the office.

- Plaintiff sought medical care for her asthmatic reaction and missed several weeks of work pursuant to the direction of her healthcare provider.

- In response to this incident, Dr. Anderson emailed the EAR staff asking them to "be considerate" in their "use of perfumes, air fresheners, and other such products" and informing them that he had installed air filters in the office. Def. Exs. E, F.

- On April 26, 2017, while still on medical leave, Plaintiff submitted her first request for accommodation of her asthma. Plaintiff's request consisted of an email to Dr. Anderson. In that email, Plaintiff indicated that she "should not come back to work unless there is no threat of airborne irritants (scents, perfumes, sprays, etc.) in [her] vicinity." She requested an "environment that is free of toxic chemicals that may endanger [her] health further." An attached note from Plaintiff's treating nurse practitioner mentioned an ongoing "reaction to aerosol," but Plaintiff's request offered no further specificity or information about the types of "irritants" or "chemicals" that she needed to avoid. Def. Ex. K.

- In May 2017, Plaintiff spoke to Pamela Smith, the Disability Program Manager for NSF's Office of Diversity and Inclusion, about Plaintiff's health issues and need for accomodations.

- In early June 2017, Smith called and met with Dr. Anderson to discuss potential accomodations for Plaintiff. Following these discussions, NSF offered a number of accomodations to Plaintiff.

- Specifically, during the summer of 2017, EAR relocated from Arlington to Alexandria, Virginia. At EAR's new Alexandria location, Plaintiff received a separate, personal office far from the coworker who had sprayed the apparently offending fragrance. Plaintiff also received from NSF: (i) a personal printer, (ii) a dedicated parking space, (iii) permission to use air filters, and (iv) permission to take rest breaks in the NSF medical unit when needed.

- However, Plaintiff never returned to full-time, in-person work at EAR's office. Instead, Plaintiff was approved to return to light-duty work on June 26, 2017, and began to telework from home at that time.

- Plaintiff and NSF mutually agreed to extend Plaintiff's telework arrangement several times. Plaintiff primarily teleworked through the remainder of 2017 and all of 2018.

- Plaintiff, however, did not exclusively work from home. She was, at times, required to come to the office to attend in-person meetings and presentations. The parties dispute where and how often these meetings took place. Plaintiff claims she was forced to come into EAR's physical office dozens of times; Defendant, citing record evidence, shows that many of those meetings were either virtual or took place at off-site locations. But there is record evidence sufficient to show that plaintiff attended a number of in-person meetings during her telework period and at least some of those meetings took place at EAR's offices. *See, e.g.,* Pl. Ex. 2 (declaration of one of Plaintiff's EAR coworkers stating that Plaintiff was required to attend in-person meetings at EAR in late 2017 and 2018).

- Declarations from Plaintiff's coworkers indicate that Plaintiff suffered some discomfort during at least one of these meetings, including reddened skin, a swollen lip, and a hoarse voice. *See* Pl. Exs. 2, 7, 18. However, no record evidence shows that Plaintiff suffered another asthma attack at EAR after March 2017.

- On July 19, 2017, Plaintiff informed Dr. Anderson of her interest in participating in NSF's Leadership Development Program.

- On July 31, 2017, Plaintiff applied to the program with Dr. Anderson's support. Plaintiff was later accepted to, and participated in, NSF's Leadership Development Program.

- Dr. Anderson rated Plaintiff's work as "outstanding" in performance reviews in both 2017 and 2018.

- Plaintiff filed a formal administrative complaint with NSF's Equal Employment Opportunity (EEO) office on September 8, 2017. The complaint asserted racial discrimination (Plaintiff is white and the coworker who sprayed a fragrance on March 16 is black), disability discrimination for failure to ensure Plaintiff's "return to a safe work environment where she would be able to breath[e]," and retaliation for conduct during Plaintiff's annual performance review process. Def. Ex. LL.

- On October 23, 2017, in an email to Smith, Plaintiff again submitted an accommodation request related to the "air quality" in EAR's office. An attached letter from Plaintiff's healthcare provider discussed the need for an "environment with controlled environmental conditions; no environmental or chemical triggers." The letter defined chemical triggers as "including aerosol sprays, scents, perfumes, VOCs, dust, formaldehyde, and other airborne contaminants." Def. Ex. VV.

- On November 13, 2017. Plaintiff emailed Dr. Anderson about an alternative assignment to the United States Geological Survey (USGS). A written proposal was attached to the email in which Plaintiff detailed possible dates and USGS programs on which she might work. Pl. Ex. 26.

- On November 15, 2017, Plaintiff emailed Dr. Anderson about her plan to hold meetings "near NSF" during business hours. Dr. Anderson responded that he felt concerned about "routinely conducting meetings on NSF business in public settings," citing a provision in the NSF telework policy that stated, "Generally, a local coffee shop would not be considered acceptable given that it does not meet the criteria of being free from distractions and interruptions, private, and secure." Nonetheless, Dr. Anderson granted Plaintiff one-time permission to hold a meeting at a nearby Starbucks. Def. Ex. YY.

- According to Plaintiff, Dr. Anderson "flat out denied" her request for a USGS detail assignment on November 17, 2017. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 10.[1]

- Plaintiff amended her EEO complaint on November 27, 2017. In a one-sentence-long email, Plaintiff asked to amend the complaint to include "reprisal." Def. Ex. MM.

- Plaintiff continued to work for NSF through 2018 and 2019. Plaintiff later accepted a position with NASA, even though she went into the NASA building for work, and the agency did not have a fragrance-free policy.

## II.

The well-settled standard for summary judgment does not require extensive elaboration here. Summary judgment is appropriate when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment,

---

[1] Plaintiff cites Pl. Ex. 34 for this proposition. It bears noting that Pl. Ex. 34 contains an email exchange from November 17, 2017, in which Dr. Anderson offered to discuss Plaintiff's USGS proposal. That exchange does not establish that Dr. Anderson denied the proposal on that date. However, the record indicates that Plaintiff requested a short-term detail with USGS (*see, e.g.*, Pl. Ex. 26) and no evidence indicates that NSF staff granted that request or ever discussed it with Plaintiff after November 17.

facts must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

## A.

Plaintiff first claims that NSF staff violated the Rehabilitation Act by failing to provide a reasonable accommodation for her asthma and related health issues following an adverse reaction to aerosolized fragrances in the office. To survive summary judgment on a failure-to-accommodate claim, Plaintiff must establish a *prima facie* case which includes the following elements: (1) Plaintiff has a qualifying disability, (2) Defendant had notice of her disability, (3) Plaintiff could perform the essential functions of her job with a reasonable accommodation, and (4) Defendant refused to make any reasonable accommodations. *See Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 414 (4th Cir. 2015). Additionally, prior to the filing of a Rehabilitation Act suit, the Plaintiff must exhaust her administrative remedies through the filing of an administrative complaint. *See Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829–32 (1976)).

The parties do not dispute that the first two elements of Plaintiff's *prima facie* case are easily met at the summary judgment stage. First, for the purposes of the Rehabilitation Act, a disability is a "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. 12102(1). Plaintiff's pulmonary health issues, which required medical treatment and extensive time off work, plausibly qualify as a "disability." Second, Plaintiff frequently corresponded with Dr. Anderson and other NSF employees about her health restrictions, putting the organization on notice about her apparent disability. Additionally, Plaintiff filed a

formal complaint with NSF's EEO office in September 2017, alleging failure to create a "safe work environment," thus exhausting at least that much of her accommodation claim. As a result, the parties primarily dispute the reasonableness of Plaintiff's requested accommodation of an irritant-free workspace.

Plaintiff's initial request for accommodation, sent by email on April 26, 2017, asked for an office environment free from "threat of airborne irritants (scents, perfumes, sprays, etc.)" and "toxic chemicals that may endanger [her] health further." Plaintiff continued to emphasize the importance of an irritant-free environment at later dates, including in an October 23, 2017 email to Smith.  Defendant correctly argues that this request is unreasonable as a matter of law.

A request for accommodation may be so broad or indeterminate as to render it "unreasonable on its face." *See, e.g.*, *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (deeming a requested accommodation of "indefinite duration and uncertain likelihood of success" unreasonable as a matter of law). Here, Plaintiff's request failed to specify which "chemicals" or "irritants" posed a risk to her health. *See* Def. Ex. K. To comply with Plaintiff's request would have required extensive regulation and policing of workers in NSF's EAR office, including a ban on a wide range of personal hygiene products. Plaintiff's request also likely encompassed a broad array of standard cleaning products.

As several courts have persuasively concluded in analogous circumstances, a request to ban an indeterminate list of scented chemicals imposes unduly burdensome issues of administration on an employer and is thus unreasonable as a matter of law. *See, e.g., Buckles v. First Data Resources, Inc.*, 176 F.3d 1098, 1099–1100 (8th Cir. 1999); *Rotkowski v. Arkansas Rehab. Servs.*, 180 F. Supp. 3d 618, 625 (W.D. Ark. 2016).  For example, in *Buckles v. First Data Resources, Inc.*, the Eighth Circuit concluded that a request for a workplace free of "irritants such

as heavy perfumes, smoke, nail polish, glue, tar, and various adhesives" was unreasonable. 176 F.3d at 1099–1100. In reaching that conclusion, the Eighth Circuit wrote that such a request "would impose an undue financial and administrative burden" and therefore an "employer is not required . . . to create a wholly isolated work space for an employee that is free from numerous possible irritants." *Id.* at 1101. The Eighth Circuit is not alone in that view. For example, a district court in this Circuit concluded that a request for a workplace free of a long list of chemicals without "any specific measure to be taken" was "plainly" unreasonable. *Feldman v. Charlotte-Mecklenburg Bd. of Educ.*, No. 11-CV-34, 2012 WL 3619078, at *7 (W.D.N.C. Aug. 21, 2012). A number of other district courts agree. *See, e.g.*, *Rotkowski*, 180 F. Supp. 3d at 625 (collecting cases that agree with the proposition that "mandatory scent-free workplace policies impose an undue financial and administrative burden on employers, because they are very difficult to enforce"). In sum, as this persuasive authority confirms, Plaintiff's request for an irritant-free workspace was unreasonable as a matter of law.

In response, Plaintiff fails to cite any contrary authority, but instead insists her request was more narrowly-tailored than those in the foregoing cases. In this respect, Plaintiff first contends that her request only related to "aerosol" products, citing a note from her nurse practitioner that was attached to her initial request email. *See* Def. Ex. K. Plaintiff's contention in this regard fails for two reasons. First, an in-office ban on the use of aerosolized chemicals would still encompass a wide variety of hygiene and cleaning products. Second, a single word in an attachment does not eliminate the breadth of Plaintiff's own words in her request, which asked for "no threat" of "irritants (scents, perfumes, sprays, etc.)." When Plaintiff again raised the issue of "air quality" in her October 23, 2017 email to Smith, the list of potential irritants remained extremely broad, "including aerosol sprays, scents, perfumes, VOCs, dust, formaldehyde, and other airborne

contaminants." Def. Ex. VV.

Plaintiff next argues that her request only touched on the presence of irritants "in [her] vicinity." Def. Ex. K. But this argument also fails to save Plaintiff's accommodation request from fatal overbreadth. Unless Plaintiff agreed to be confined to one small, sealed portion of the EAR office, which she did not agree to do and which would have been impractical, her request still demanded an office-wide policy, as her vicinity would shift throughout the workday whenever she moved to carry out her duties. Accordingly, Plaintiff's initial accommodation request—for an office free of airborne irritants and toxic chemicals—was fatally vague and overbroad and thus unreasonable as a matter of law. *See, e.g.*, *Buckles*, 176 F.3d at 1099–1100.

Importantly, Plaintiff never withdrew or abandoned this request, even though Plaintiff and NSF staff engaged in the required interactive process. It is well-settled law that the "Rehabilitation Act does not require an employer to provide the exact accommodation that an employee requests." *Hannah P. v. Coats*, 916 F.3d 327, 338 (4th Cir. 2019). Instead, when an employee identifies a disability and a desire for accommodation, an employer should engage in an "interactive process" to identify a reasonable accommodation which allows the employee to perform essential duties of her position. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013). Here, following discussions between Plaintiff, Pamela Smith, and Dr. Anderson, NSF offered and provided Plaintiff the following accommodations during the summer of 2017:

- Personal office space at EAR distant from the coworker who sprayed a fragrance.

- A designated parking space.

- A personal printer.

- The ability to take breaks in the NSF health unit.

- Authorization to use an air purifier.

- Ongoing authorization for Plaintiff to complete much of her job via telework.

Despite all of these accommodations, Plaintiff nonetheless continued to press her unreasonable request for an environment free of "aerosol sprays, scents, perfumes, VOCs, dust, formaldehyde, and other airborne contaminants." Def. Ex. VV (email on October 23, 2017).

Plaintiff also argues that NSF could have reasonably accommodated her health issues by permitting her to work entirely outside the EAR offices. Indeed, Plaintiff contends that her telework arrangement with NSF permitted her to do so, and that in-person meetings violated the parties' agreement. The record does not support that contention. An agreement to permit telework does not equate to an agreement that an employee may permanently avoid visiting a physical workplace. Here, a review of the relevant record evidence reveals that none of the pertinent NSF policies or emails promise Plaintiff that she need never come to the EAR office. *See, e.g.,* Def. Exs. II, JJ, ZZ, AAA. In fact, NSF's telework policy warns that teleworking employees may have to adjust their schedules when "face-to-face" interaction is necessary. Def. Ex. ZZ.

Plaintiff's assertion that exclusive telework would have been a reasonable accommodation in this case also finds no support in the evidentiary record. It is a well-settled principle that, under the Rehabilitation Act, a reasonable accommodation must permit an employee to carry out the essential functions of her job. *See, e.g., Myers v. Hose*, 50 F.3d 278, 281–82 (4th Cir. 1995).[2] Here, full-time telework from home and never coming into the EAR offices would not have allowed Plaintiff to carry out her essential job duties. Record evidence indicates that Plaintiff's position entailed frequent in-person meetings. Indeed, Plaintiff herself sought to hold face-to-face meetings "near NSF" during her telework period. Def. Ex. YY. Additionally, Defendant submitted as an

---

[2] Stated otherwise, an individual who cannot perform the essential duties of her job, even with a requested accommodation, is not a "qualified" claimant under the Rehabilitation Act. *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

uncontested fact, and Plaintiff does not dispute, that speaking at meetings and presentations was one of the essential duties of Plaintiff's position. Moreover, in Plaintiff's own words, she was present at "every" panel presentation she hosted and considered some aspects of her job (such as speech coaching) "impossible" to carry out via telework. Def. Ex. A at 6–7.

As noted in a persuasive Fifth Circuit opinion, although telework is increasingly common, "there is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." *Credeur v. Louisiana*, 860 F.3d 785, 793 (5th Cir. 2017). That opinion further noted that, under EEOC guidance, many jobs include essential duties that can only be performed in the workplace, such as those that require "face-to-face interaction and coordination of work with other employees." *Id.* No record evidence supports Plaintiff's contention that her position—which included frequent face-to-face coordination and in-person presentations—was one of the few jobs for which permanent virtual work would be reasonable.

Plaintiff also points out that Defendant could have granted her request to conduct her meetings at nearby public locations, such as a Starbucks coffee shop. Defendant points out that that arrangement would have violated NSF's telework policy. *See* Def. Ex. ZZ at 1. Plaintiff responds that this policy was not always followed at EAR, where staff sometimes held meetings at nearby coffee shops or restaurants. Indeed, even in Plaintiff's case, Dr. Anderson granted Plaintiff permission to hold a meeting at Starbucks on at least one occasion. But evidence that a policy was not always followed does not establish that *never* following the policy is a proper solution. Simply put, some discussions among government employees may appropriately be held in public and others may not.

Although modifying a policy may constitute a reasonable accommodation in some cases— *see, e.g.*, *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1263 (11th Cir. 2007) (citing *US*

*Airways, Inc. v. Barnett*, 535 U.S. 391, 397–98 (2002))—a blanket violation of NSF's telework policy is not an appropriate solution here. For one, it is difficult to see how holding meetings in a public coffee shop offers an effective solution for Plaintiff's fragrance and aerosol sensitivity issues, given the presence of customers who might well use products harmful to Plaintiff in her presence. Additionally, no record evidence indicates that any public locations near NSF were suitable for other aspects of Plaintiff's job, such as hosting presentations or speech coaching.

Furthermore, an employer need not offer an accommodation where it would result in undue hardship. *See Rodgers v. Lehman*, 869 F.2d 253, 258 (4th Cir. 1989). Here, undue hardship would undoubtedly follow from a command that Defendant must permit an employee to hold all meetings in public. A government agency has sound reason to keep some discussions within its physical walls. A finding that Plaintiff must be permitted to meet in public restaurants or coffee shops certainly raises the risk of disclosure of sensitive information. Thus, even if meeting in public coffee shops constituted a reasonable means to avoid "irritants" like "scents, perfumes, sprays, etc." (Def. Ex. K), a government agency would face undue hardship if required to allow *all* meetings to be in public places.

Accordingly, Plaintiff has failed to identify any reasonable accommodation beyond those offered by Defendant that fits her essential job duties. In essence, Plaintiff requested that NSF either impose a blanket ban on "chemicals" and "irritants" in the EAR offices or permit her to avoid ever coming into those offices. Neither request is reasonable. The former imposes too high an administrative burden on Defendant; the latter fails to fit Plaintiff's job duties insofar as it would have rendered her position entirely remote or would have required public discussions of internal government matters. Plaintiff has therefore failed to establish her *prima facie* failure-to-accommodate case. Consistent with well-established authority, summary judgment must be

granted for Defendant on Plaintiff's reasonable accommodation claim.

**B.**

Plaintiff also claims that NSF staff retaliated against her for participating in protected activities in violation of the Rehabilitation Act. According to Plaintiff, the retaliatory acts included: requiring Plaintiff to speak at meetings, mandating that some meetings take place at EAR, and denying a short-term detail with USGS. To survive summary judgment, Plaintiff must set forth a *prima facie* case which includes a "demonstration that [the] employee engaged in protected activity, that [the] employer took adverse employment action against her, and a causal connection between the employment action and the protected activity." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 271 (4th Cir. 2001). Additionally, Rehabilitation Act claims are subject to an exhaustion requirement. *Spencer*, 147 F. App'x at 375 (citing *Brown*, 425 U.S. at 829–32). There is no question that Plaintiff engaged in protected activities, including seeking an accommodation for her disability and filing an EEO complaint. As a result, the critical questions are: (i) whether the acts Plaintiff identifies constitute adverse employment actions and (ii) whether those alleged adverse actions were causally related to Plaintiff's protected activity.

Requirements that Plaintiff speak at meetings and attend meetings at EAR's offices do not constitute adverse employment actions. An adverse employment action "is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quotes and brackets omitted). In this case, speaking was always one of Plaintiff's essential job duties and NSF policies mandated that meetings must take place at private locations instead of public locations like coffee shops. Requiring Plaintiff to carry out the basic duties of her employment or follow established agency policies can hardly be said to be an adverse act. Defendant did not change the "terms, conditions,

14

or benefits" of Plaintiff's employment—it merely asked her to carry them out.

Plaintiff's claim regarding denial of a short-term detail with USGS also fails to qualify as an adverse employment action. In essence, the detail with USGS would have taken the form of a short-term transfer between agencies. Courts in this Circuit have consistently concluded that "a mere refusal to grant a transfer that an employee desires does not qualify as an adverse employment action unless the decision 'had some significant detrimental effect' on the employee." *Wagstaff v. City of Durham*, 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002), aff'd, 70 F. App'x 725 (4th Cir. 2003) (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999)). *See also McDougal-Wilson v. Goodyear Tire & Rubber Co*., 427 F. Supp. 2d 595, 608–09 (E.D.N.C. 2006) (concluding that denial of a lateral transfer between similar positions was not an adverse employment action); *Stout v. Kimberly Clark Corp.*, 201 F. Supp. 2d 593, 602–04 (M.D.N.C. 2002) (concluding that denial of a transfer to a position with different duties but similar compensation, benefits, and promotion opportunities was not an adverse employment action). Several circuit courts have agreed. *See, e.g., Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (denial of a transfer that "involves no significant changes in an employee's conditions of employment" is not an adverse employment action), citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532–33 n. 6 (10th Cir.1998); *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999) ("A plaintiff . . . who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment.") Although Plaintiff may have desired a post with USGS, no record evidence indicates that Plaintiff lost out on a salary increase or enjoyed less responsibility or opportunities for promotion by remaining with NSF. Thus, as persuasive authority confirms, denial of Plaintiff's requested USGS assignment did not constitute an adverse

employment action.[2]

In sum, Plaintiff fails to identify any adverse employment actions and therefore has not established a prima facie case of retaliation under the Rehabilitation Act. *Hooven*-Lewis, 249 F.3d 259, 271 (4th Cir. 2001). Accordingly, summary judgment must be granted in Defendant's favor.

### III.

For the reasons set forth above, Defendant's motion for summary judgment will be granted.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
September 15, 2021

/s/

T. S. Ellis, III
United States **District Judge**

---

[2] Plaintiff's denial-of-transfer retaliation claim faces another hurdle; Plaintiff failed to exhaust it. Critically, Dr. Anderson's November 17 denial of Plaintiff's USGS detail request predates her November 27 amendment of her EEO complaint. As such, Plaintiff had an opportunity to include that act of alleged retaliation in her complaint, but neither her original complaint nor her amendment mentions the USGS detail. As the Fourth Circuit has made clear, "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith*, 202 F.3d at 247. Here, a reasonable investigation into Plaintiff's EEO allegations would likely have encompassed the conditions in EAR's offices and the substance of supervisory feedback provided to Plaintiff, not transfer to another agency. This case is akin to *Chacko v. Patuxent Institution*, where an administrative complaint about "discrete instances of supervisor misconduct not involving name calling" did not preserve judicial claims of "nonsupervisory misconduct which did involve name calling." 429 F.3d 505, 512-13 (4th Cir. 2005).